STATE OF LOUISIANA

COURT OF APPEAL

FIRST CIRCUIT

NO. 2022 CA 0392

FRANK J. DIVITTORIO, JENNIFER LEE, AND ELSBET SMITH

VERSUS

SEALE & ROSS, PLC

*Judgment Rendered:* __DEC 2 7 2022__

* * * * * * * *

Appealed from the
21st Judicial District Court
In and for the Parish of Tangipahoa
State of Louisiana
Case No. 2019-0003801

The Honorable Brenda Bedsole Ricks, Judge Presiding

* * * * * * * *

| | |
|---|---|
| Kenneth C. Bordes<br>New Orleans, Louisiana | Counsel for Plaintiffs/Appellees<br>Frank J. Divittorio, Jennifer Lee, and<br>Elsbet Smith |
| Craig J. Robichaux<br>Cameron D. Robichaux<br>Mandeville, Louisiana | Counsel for Defendant/Appellant<br>Seale & Ross, PLC |

* * * * * * * *

BEFORE: McDONALD, WELCH, AND LANIER, JJ.

McDonald, J. concurs.

**LANIER, J.**

Appellant, Seale & Ross, PLC (Seale & Ross), challenges the Twenty-First Judicial District Court's May 18, 2022 judgment in favor of the appellees, Frank DiVittorio and Elsbet Smith. The appellees, Frank DiVittorio, Jennifer Lee, and Elsbet Smith, have filed an answer to the appeal. For the reasons that follow, we affirm in part, reverse in part, and render. We also grant the appellee's answer to the appeal, in part, and deny it in part.

## FACTS AND PROCEDURAL HISTORY

The plaintiffs, Mr. DiVittorio, Ms. Lee, and Ms. Smith were employed by Seale & Ross as associate attorneys, until they resigned in December of 2016.[1] On January 19, 2017, the plaintiffs each emailed Seale & Ross, requesting compensation they alleged was due them for their work while employed by Seale & Ross. The emails made reference to a formula used by Seale & Ross to compute compensation for associate attorneys. Based on the formula, the plaintiffs claimed their compensation was comprised of 15% of collections from cases that originated with each attorney, plus 30 to 35% of collections from the production (or work) of the attorney. Also, the plaintiffs claimed they were eligible at the end of the year to receive a production bonus of 10% of collections over their expected production potential, an amount that is set earlier in the year.

The plaintiffs alleged they were owed "settle up" payments, which is the difference between collections from their expected production and their actual production. The plaintiffs claimed that after Seale & Ross closed its books on 2016, the amounts of their settle up payments could be calculated and remitted to them. The plaintiffs alleged that Seale & Ross did not make any further payments to them.

---

[1] Mr. DiVittorio's and Ms. Smith's effective date of resignation was December 31, 2016. Ms. Lee's effective date of resignation was December 5, 2016.

The plaintiffs collectively filed a petition for judgment against Seale & Ross for unpaid wages, penalties, and costs on December 4, 2019.[2] The plaintiffs made the aforementioned allegations, and further claimed that Seale & Ross failed to pay wages pursuant to La. R.S. 23:631, known as the Louisiana Wage Payment Act. They alleged that Seale & Ross withheld wages in bad faith, and as a result, Seale & Ross was liable to the plaintiffs for penalties and attorney fees.

Trial was held on the matter on March 31, 2021. A hearing on the award of attorney fees was held on July 19, 2021. On September 13, 2021, the trial court signed a judgment, which: ruled that the plaintiffs' production bonuses were non-discretionary wages that were withheld by Seale & Ross in bad faith; awarded Ms. Smith $12,828.42 in production bonus wages and $39,961.80 in penalties; awarded Mr. DiVittorio $3,516.78 in production bonus wages and $38,399.40 in penalties; and, awarded the plaintiffs $43,862.50 in attorney fees, as well as any judicial interest owed.[3] The trial court denied all other claims made by the plaintiffs.

In its reasons for judgment, the trial court found that the origination bonuses claimed by the plaintiffs were discretionary, as the attorney compensation system of Seale & Ross stated that the bonus "may" be paid to associate attorneys at the end of the year and did not fit the definition of "wages" under La. R.S. 23:632. However, the trial court found the production bonus was a non-discretionary wage as defined by La. R.S. 23:632, because the production bonus was actually a payment for work done by the attorney that the attorney would reasonably have expected to receive at the end of the year. The trial court held that Seale & Ross owed the plaintiffs their production bonuses, and that Seale & Ross withheld these wages in bad faith because another attorney who left employment the same year as the plaintiffs was paid his production bonus, while the plaintiffs were not.

---

[2] The petition was fax filed on December 3, 2019.

[3] Ms. Lee was not awarded a production bonus or penalties; however, the trial court found she was entitled to a share of the lump sum attorney fee award because of the time and work expended by her counsel, who was also counsel for Mr. DiVittorio and Ms. Smith.

On September 28, 2021, Seale & Ross appealed the September 13, 2021 judgment. The plaintiffs answered the appeal on April 18, 2022. On May 6, 2022, this Court issued a Rule to Show Cause Order in response to the September 13, 2021 judgment because it lacked proper decretal language because it did not adequately identify the name of the party in whose favor the relief was awarded. See *D'Luca v. Kirkland*, 2020-0713, 0714 (La. App. 1 Cir. 2/19/21), 321 So.3d 411, 413. The trial court supplemented the record with an amended judgment signed May 18, 2022, which rectified the decretal language by specifying to which parties the relief was rewarded. Although the record had already been lodged with this Court, out of an abundance of caution to preserve their rights on appeal, the plaintiffs filed a motion to appeal the May 18, 2022 judgment on June 27, 2022.[4]

## ASSIGNMENTS OF ERROR

Seale & Ross asserts the following assignments of error:

1. The trial court erred in finding that Seale & Ross's discretionary bonus system was instead mandatory and thus constituted wages. This finding is inconsistent with the trial court's finding that each plaintiff's terms of employment regarding compensation made clear that all bonuses were at the employer's discretion, and that Seale & Ross had declined to pay the bonuses. Thus, the money judgment in favor of Mr. DiVittorio and Ms. Smith is erroneous. In reaching this erroneous conclusion, the trial court committed numerous legal errors in interpreting the plain language of Seale & Ross's bonus system.

2. After concluding that the bonuses were wages, the trial court further erred in finding that bonuses, which could only have come due several weeks after the end of plaintiffs' employment, were "then due under the terms of employment" at the time of the plaintiffs' terminations. Therefore, that portion of the judgment which awarded attorney fees and penalties is erroneous because to support an award of attorney fees and penalties, the wages must be then due under the terms of employment at the time of termination as required under La. R.S. 23:631.

3. The trial court erred in awarding penalty wages under La. R.S. 23:632. That statute only allows penalty wages when an employer's dispute of a wage claim is not made in good faith. Seale & Ross relied on its written procedures that had been in effect for many years, the controlling legal

---

[4] The petition was fax filed on June 20, 2022.

4

precedents, and the advice of outside counsel rejecting the plaintiffs' demands for bonus payments. Any finding that Seale & Ross was not acting in good faith is manifestly erroneous.

4. Even if the trial court was correct in awarding penalty wages, the trial court erred in calculating the 90-day wage penalty. The calculation of the penalty wages in the judgment used a 22-day month to compute the daily wage rate, then used a 30-day month in calculating the penalty. Also, the trial court improperly calculated the plaintiffs' daily wage rate. Application of the incorrect methodology and errors in calculations render the judgment erroneous.

Additionally, in their answer to the appeal, the plaintiffs request that this Court reverse the trial court's finding that the origination bonuses were discretionary, and instead, find that the origination bonuses were non-discretionary wages improperly withheld pursuant to La. R.S. 23:631, *et seq.* The plaintiffs also request that Seale & Ross be cast with all costs and attorney fees incurred in conjunction with the instant appeal, pursuant to La. R.S. 23:631, *et seq.*

## STANDARD OF REVIEW

A trial court's determination of the existence or nonexistence of an oral contract is a finding of fact governed by the manifest error or clearly erroneous standard of review. *Steve Owens Construction, Inc. v. Bordelon*, 2017-1320 (La. App. 1 Cir. 2/27/18), 243 So.3d 601, 604. An appellate court cannot set aside a trial court's factual findings in the absence of manifest error or unless those findings are clearly wrong. *Rosell v. ESCO*, 549 So.2d 840, 844 (La. 1989). If the factual findings are reasonable in light of the record reviewed in its entirety, an appellate court may not reverse, even if convinced that, had it been sitting as the trier of fact, it would have weighed the evidence differently. *Steve Owens Construction, Inc.*, 243 So.3d at 604-05.

## DISCUSSION

When claiming the existence of an oral contract for the payment of money above $500.00 in value, the party claiming such must prove the existence and terms of the contract by at least one credible witness and other corroborating

5

circumstances. La. C.C. art. 1846[5]; *Seale & Ross, P.L.C. v. Holder*, 2019-1487 (La. App. 1 Cir. 8/3/20), 310 So.3d 195, 200. In proving the existence of an oral contract, a party in the litigation may serve as his or her own witness in fulfilling the requirements of La. C.C. art. 1846. *Seale & Ross, P.L.C.*, 310 So.3d at 200. With regard to an oral contract, a plaintiff may offer his or her own testimony in support of his or her claim; however, the other circumstances that corroborate the claim must come from a source other than the plaintiff. *Id.*, at 200-01. The other corroborating circumstances need only be general in nature and independent proof of every detail of the agreement is not required. *Id.*, at 201.

Initially, we note that Seale & Ross admitted that the employment contracts it had executed with the plaintiffs were unwritten, oral contracts, even though the policies outlining the associate attorney compensation system and bonus system were written. The employee handbook, which was emailed to all associate attorneys on June 19, 2015, gave an explanation of the bonus program and stated that a memo concerning the current bonus philosophy was available upon request. Only Ms. Lee requested the memo concerning the bonus philosophy, but testified she never received it. The plaintiffs acknowledged that they were advised by the partners about the associate attorney compensation system that was used in calculating their salaries. All parties acknowledged these oral contracts through their own testimony, which is corroborated by the employee handbook and compensation system, thereby satisfying the requirements of La. C.C. art. 1846.

The record reflects that firm partners would meet annually with the associate attorneys, around the beginning of each year, where an agreement was reached

---

[5] Louisiana Civil Code article 1846 states:

> When a writing is not required by law, a contract not reduced to writing, for a price or, in the absence of a price, for a value not in excess of five hundred dollars may be proved by competent evidence.
>
> If the price or value is in excess of five hundred dollars, the contract must be proved by at least one witness and other corroborating circumstances.

concerning the associate's salary for the next year, as well as bonuses to be paid at the end of that year. The proposed salary and bonuses would then be voted on by all the partners.

The definitions of "origination bonus" and "production bonus" are contained in a document titled "Associate Attorney Compensation System," which was submitted as evidence by Seale & Ross. However, none of the plaintiffs recalled receiving that particular document. Regardless, the record shows that the plaintiffs were aware of how their rates of compensation and bonuses were calculated and distributed. The only information regarding bonuses that the plaintiffs admitted receiving was contained in the employee handbook. The handbook describes the bonus program as follows:

> [W]e have a bonus program structure that may actually allow additional compensation should you [exceed job requirements]. While this program is discretionary to the firm and must depend on an evaluation by the partners of the firm of its ability to pay any bonuses[,] we make every effort to reward performance in excess of the requirements with recognition in form of a bonus. While not guaranteed, our track record has been quite good in rewarding such performance. A memo outlining the firm's current attorney bonus philosophy is available upon request.

The plaintiffs claimed in their petition that the alleged bonuses that Seale & Ross withheld from them were actually wages that were due pursuant to La. R.S. 23:631 *et seq.*[6] As such, the plaintiffs argue, the wages due them were not discretionary bonuses. In its reasons for judgment, the trial court analyzed both the production bonuses and the origination bonuses to determine whether they were wages due the plaintiffs or discretionary bonuses.

---

[6] Louisiana Revised Statutes 23:631(A)(1)(b) states:
> Upon the resignation of any laborer or other employee of any kind whatever, it shall be the duty of the person employing such laborer or other employee to pay the amount then due under the terms of employment, whether the employment is by the hour, day, week, or month, on or before the next regular payday for the pay cycle during which the employee was working at the time of separation or no later than fifteen days following the date of resignation, whichever occurs first.

Based on the employee handbook emailed to all associate attorneys on June 19, 2015, the plaintiffs would have seen that bonuses were characterized as discretionary. Although it is not clear whether the plaintiffs received written definitions of origination and production bonuses, those definitions, as written in the Associate Attorney Compensation System document, are as follows:

**Origination Bonus**
The firm may pay a bonus of 15% annually on deposited fees from files on which the attorney is the originating timekeeper. Approximately one half of this will be advanced to each attorney throughout the year (*i.e,* $1/24^{th}$ of the firm's estimate of one-half of the total bonus will be paid at each pay period throughout the year)... For attorneys with more than one year with the firm, the estimate used is the actual Originated Fees amount from the Tabs report for that timekeeper during the last completed calendar year.

The Actual Originated Fee amount will be determined each January for the previous year, and any remaining unpaid bonus amount from the previous year will be considered each January for payment as a discretionary bonus.

* * *

**Production Bonus**

If an attorney exceeds his or her Deposit Requirements for the year the firm may pay a Production Bonus rewarding this achievement. The bonus is calculated as follows:
1. The attorney's actual deposited fees are used to recalculate what that attorney's base salary would have been based on the actual total deposits. (The actual deposits may entitle the attorney to a higher or lower percentage of total fees than the estimate used, etc.)
2. From this recalculated amount we subtract the base salary [actually] paid to the attorney. This difference is the amount an attorney has exceeded his or her Requirement.
3. This difference is multiplied by 110% to arrive at the total Potential Production Bonus[.]
4. This Bonus is considered each January after actual financial data from the previous year has been finalized.

As part of the Production Bonus, we review actual deposit performance each quarter, and we will advance one half of any overage, up to $1,000.00 at the end of each quarter. This amount will be subtracted from any annual Production Bonus payable; but once this quarterly payment has been paid it will not be due back to the Firm in the event that your actual bonus amount is less than the amount already paid out.

The trial court noted that origination bonuses "may" be given to attorneys who are the originating timekeepers on new files. The trial court compared the origination bonus system to the profit-sharing system found in *Foshee v. Georgia Gulf Chemicals & Vinyls, L.L.C.*, 2009-0530 (La. App. 1 Cir. 10/21/09), 2009 WL 6316254 (unpublished opinion), <u>affirmed</u>, 2009-2477 (La. 7/6/10), 42 So.3d 346. ) In *Foshee*, this Court held that an employee with performance issues was not entitled funds pursuant to his employer's profit-sharing plan. The profit-sharing plan was an incentive plan which was tied directly to the company's operating results and individual performance with no guarantee of payment and the employee's performance was deficient enough to lead to his termination. *Foshee*, 2009 WL 6316254 at *5.

In the instant case, the trial court found that the origination bonus, based on its structure, was designed to incentivize attorneys to bring in new business. It was not based on the attorney's salary or later work done by the attorney on those new files. The trial court therefore determined that the origination bonus was not a "wage" and was wholly discretionary on the part of Seale & Ross. Finding no manifest error in this conclusion, which is reasonably supported by the record, we will not disturb the trial court's ruling on this issue. <u>See</u> *Rosell*, 549 So.2d at 844. As such, that portion of the plaintiff's answer to the appeal requesting reversal of the trial court's judgment as to the characterization of the origination bonus as discretionary is denied.

As to the production bonus, the trial court compared that bonus to the bonus discussed in *Williams v. Dutchtown Pharmacy, L.L.C.*, 2008-2559 (La. App. 1 Cir. 9/11/09), 24 So.3d 221. In *Williams*, the plaintiff provided professional services to the defendant, and, following his termination, filed suit against the defendant for unpaid wages and bonus pay. *Id.*, at 223. The defendant argued that the bonus was discretionary. The trial court found that the bonus was actually non-

discretionary because it was payable on a formula based on a percentage of total sales for the year. *Id.*, at 227. Therefore, the plaintiff was entitled to pay based upon the formula and the defendant's gross sales receipts. *Id.*, at 226. This Court found that the trial court's reasoning was not manifestly erroneous. *Id.*, at 227.

Likewise, we do not find the trial court manifestly erred in its determination that the production bonuses were actually wages. Similar to *Williams*, the plaintiffs' production bonuses were based on a formula. The bonus would be paid at 110% of the difference between the amount of collections the attorney agreed to produce at the beginning of the year and the amount of collections the attorney actually produced at the end of the year. The explanation of the production bonus considers the attorney's actual production in a recalculation of his or her salary. A salary, or "wage," as defined by Black's Law Dictionary, 11th Ed. (2019), is "Payment for labor or services, [usually] based on time worked or quantity produced; [specifically], compensation of an employee based on time worked or output of *production*." (Emphasis added). As in *Williams*, we conclude the production bonus in the instant case is based on actual work performed by the plaintiffs, making it a non-discretionary wage. We will therefore not disturb the trial court's factual finding that the production bonuses were non-discretionary wages. See *Rosell*, 549 So.2d at 844.

In finding that the production bonus was a non-discretionary wage, the trial court then had to determine if the wage was due and owing. Pursuant to La. R.S. 23:631(A)(1)(b), Seale & Ross had to pay the plaintiffs the amount that was due them at the time of their resignation, under the terms of their employment. Seale & Ross argues that, since the plaintiffs resigned prior to the end of 2016, they were not owed the production bonuses, which were paid in January of 2017. Like the trial court, we disagree. The record is abundantly clear that production bonus wages were determined by collections made throughout the year; therefore, a

10

production bonus wage was typically not paid until January of the following year. Despite the timing of the payment, the production bonus wages in question related to the work done by the plaintiffs during 2016, up until their resignations. If the plaintiffs have not been paid for work they had done in 2016, that payment is due and owing.

The wages were due to plaintiffs on or before their next regular payday after resignation, or no later than fifteen days following resignation, whichever came first. La. R.S. 23:631(A)(1)(b). As it is clear that the plaintiffs were never paid, the trial court had to make a determination, under La. R.S. 23:632, as to whether Seale & Ross withheld payment in good faith. In order for the employer to be held liable for penalty wages, the employer's actions must have been motivated through bad faith, or he must be found to have acted in an arbitrary or unreasonable manner given the circumstances. *Leprettre v. RCS, LLC*, 2016-0382 (La. App. 3 Cir. 11/16/16), 206 So.3d 1215, 1220. The trial court noted that while the plaintiffs were not paid the purported production bonus wages, another attorney, Patrick Reso, who also resigned in 2016 around the same time as Ms. Lee, was paid both a production bonus and an origination bonus.

Whether or not there is an equitable defense to penalty wages depends on the particular facts of each case. *Leprettre*, 206 So.3d at 1220, quoting *Pace v. Parker Drilling Co. & Subsidiaries*, 382 So.2d 988, 990 (La. App. 1 Cir. 1980), writ denied, 383 So.2d 1016 (La. 1980). A trial court's determination of whether an employer is arbitrary or in bad faith for purposes of imposing penalty wages is a question of fact and is, therefore, subject to the manifest error standard of review. *Scarbrough v. Lynmar Holdings, LLC*, 2021-1566 (La. App. 1 Cir. 8/31/22), ___ So.3d___, 2022 WL 3905772, *2, writ denied, 2022-01474 (La. 11/22/22), ___ So.3d ___, 2022 WL 17101472.

11

At trial, the plaintiffs submitted into evidence an email dated March 16, 2017 from Kenneth Ross, then a partner at Seale & Ross, to Mr. Reso, which confirmed that Seale & Ross owed Mr. Reso money for his collections and originations for the year 2016. Mr. Ross informed Mr. Reso that he would receive a check for $10,560.07 as final payment. At trial, Mr. Ross testified that Mr. Reso was also a partner at Seale & Ross at the time he resigned in 2016. He also testified that Seale & Ross traditionally has not paid bonuses to employees after they left the firm.

Leslie Bolner, another partner at Seale & Ross, testified at trial that Mr. Reso did not receive bonuses for 2016; rather, he was paid for work he had done in 2016 with "funds that came in the next year." While the email from Mr. Ross to Mr. Reso does not classify the payment as a bonus, the email does state that the payment is for "the collection side as well as the origination side." Regardless of whether Seale & Ross considered the funds due Mr. Reso to be a bonus, the funds were due to Mr. Reso for work he performed in 2016. Since wages are equivalent to the amount then due under the terms of employment, Mr. Reso received a wage after resigning from Seale & Ross, while the plaintiffs did not. See *Slaughter v. Board of Sup'rs of Southern University and Agr. and Mechanical College*, 2010-1049 (La. App. 1 Cir. 8/2/11), 76 So.3d 438, 450, writ denied, 2011-2110 (La. 1/13/12), 77 So.3d 970.

Seale & Ross established at trial that at the start of 2016, the firm was experiencing cash flow issues and would have to pay substantially lower bonuses to its employees. In January of 2017, at the meeting of partners, partner Glen Galbraith moved that "discretionary bonuses" be denied to the plaintiffs and Patrick Reso, and the motion passed. Mr. Galbraith testified at trial that his reasoning behind the motion was to "figure out how to find enough money to pay bonuses to the people that were still there." Despite the motion passing, Mr. Reso

was nevertheless paid for his work, while the plaintiffs were not. Despite the cash flow issues, it would have been possible for Seale & Ross to pay bonuses to all its attorneys, even though the bonuses would have been reduced. We therefore conclude the trial court did not manifestly err in finding Seale & Ross's refusal to pay bonus wages to the plaintiffs to be arbitrary and unreasonable.

Because we affirm the finding that Seale & Ross did not act in good faith, the plaintiffs were entitled to penalty wages pursuant to La. R.S. 23:632.[7] Therefore, we must next determine if the trial court correctly calculated the penalty wages assessed against Seale & Ross. Pursuant to the evidence submitted, Ms. Smith was awarded $12,828.42 in owed production bonus wages and $39,961.80 in penalties (plus judicial interest). Mr. DiVittorio was awarded $3,516.78 in owed production bonus wages and $38,399.40 in penalties (plus judicial interest). Because the evidence indicates there was no excess salary to be paid to Ms. Lee at the end of 2016, she received no award for unpaid wages.

Pursuant to La. R.S. 23:632(A), penalty wages are to be assessed at ninety days' wages at the employee's daily rate of pay, or else full wages from the time the employee's demand for payment is made until the employer shall pay or tender

---

[7] Louisiana Revised Statutes 23:632 states, in pertinent part:

    A. Except as provided for in Subsection B of this Section, any employer who fails or refuses to comply with the provisions of [La.] R.S. 23:631 shall be liable to the employee either for ninety days wages at the employee's daily rate of pay, or else for full wages from the time the employee's demand for payment is made until the employer shall pay or tender the amount of unpaid wages due to such employee, whichever is the lesser amount of penalty wages.

    B. When the court finds that an employer's dispute over the amount of wages due was in good faith, but the employer is subsequently found by the court to owe the amount in dispute, the employer shall be liable only for the amount of wages in dispute plus judicial interest incurred from the date that the suit is filed. If the court determines that the employer's failure or refusal to pay the amount of wages owed was not in good faith, then the employer shall be subject to the penalty provided for in Subsection A of this Section.

    C. Reasonable attorney fees shall be allowed the laborer or employee by the court which shall be taxed as costs to be paid by the employer, in the event a well-founded suit for any unpaid wages whatsoever be filed by the laborer or employee after three days shall have elapsed from time of making the first demand following discharge or resignation.

the unpaid wages, whichever is lesser. Ms. Smith's and Mr. DiVittorio's initial demands to Seale & Ross for payment of unpaid wages was made on January 19, 2017, via email. The initial judgment ordering payment of unpaid wages was signed September 13, 2021. Ninety days' wages will therefore be the lesser amount of penalty wages. Ms. Smith's base yearly salary for 2016 was $71,238.48, and Mr. DiVittorio's was $89,319.60. However, due to the actual collections attributed to each attorney, Ms. Smith's "should have been" salary was $96,565.00, and Mr. DiVittorio's was $99,950.00. Since the "should have been" salary reflects what Seale & Ross deemed as the actual value of the plaintiffs' work and therefore constitutes a "wage", these salaries are to be used in the calculation for penalty wages rather than the base salaries.

Seale & Ross argues the trial court incorrectly used a 22-day month to calculate the daily wage rate, then used a 30-day month to calculate the penalty wages. The trial court adopted the formula found in *Wortham v. Acadia Healthcare, LLC*, 2014-0718 (La. App. 3 Cir. 3/18/15), 160 So.3d 602, 608, writ denied, 2015-0767 (La. 6/1/15), 171 So.3d 264 (salary divided by twelve months divided by twenty-two working days in a month times ninety). We find this to be a reasonable formula for calculating penalty wages and will not disturb it. In so calculating, however, we find the trial court made an error in its calculation. Ms. Smith's "should have been" salary of $96,565.00, divided by twelve, divided by twenty-two, then multiplied by ninety equals $32,919.89. Mr. DiVittorio's "should have been" salary of $99,950.00, divided by twelve, divided by twenty-two, then multiplied by ninety equals $34,073.86. We therefore amend these awards accordingly.

As to attorney fees, La. R.S. 23:632(C) mandates an award of reasonable attorney fees in the event that a plaintiff files a "well-founded" suit for unpaid wages. See *Kern v. River City Ford, Inc.*, 98-0407 (La. App. 1 Cir. 2/19/99), 754

14

So.2d 978, 985. A suit is considered "well-founded" when the employee brings a successful suit and recovers unpaid wages. *Haber v. Ocean Canyon Properties, Inc.*, 2017-1472 (La. App. 1 Cir. 5/31/18), 251 So.3d 454, 460.

A hearing on attorney fees was held before the trial court on July 19, 2021, following an objection by Seale & Ross to the amount of attorney fees requested by the plaintiffs. Specifically, Seale & Ross objected to any attorney fees being owed to Ms. Lee, since she did not recover wages in her lawsuit. The trial court nevertheless initially awarded a lump sum attorney fee of $47,850.00, which was 159.5 hours of work at $300 an hour. The fee agreement between plaintiffs and their counsel was 40 percent of total recovery or statutory attorney fees, whichever was greater.[8] The trial court reasoned that although Ms. Lee did not recover, she was essentially a witness for the other two plaintiffs, and by preparing Ms. Lee's case for trial, she was also prepared as a witness. The court then reduced the one-third of the attorney fee attributable to Ms. Lee by twenty-five percent.[9]

We disagree that Ms. Lee should share in the award of attorney fees. Her suit does not meet *Haber*'s definition of "well-founded," since she did not recover unpaid wages, and therefore, she is not entitled to attorney fees. Although the trial court did not state the exact amount of attorney fees it attributed to Ms. Lee, the trial court's calculation appears to be twenty-five percent of one third of the lump sum award ($47,850.00). We find the trial court abused its discretion in awarding attorney fees to Ms. Lee. We find it reasonable to award two-thirds of the lump sum, one third attributable to Ms. Smith and one third attributable to Mr. DiVittorio, bringing the total award of attorney fees to $31,900.00. In addition, we grant the plaintiffs' answer to the appeal, in part, and award $4,000.00 in attorney fees in conjunction with the instant appeal to Ms. Smith and Mr. DiVittorio.

---

[8] The lump sum of $47,850.00 is the greater number.
[9] In following the trial court's mathematical rationale, the resulting attorney fee award should be $43,619.58. However, the trial court awarded $43,862.50 in attorney fees.

## DECREE

The judgment of the Twenty-First Judicial District Court, insofar as it awards unpaid wages in the amount of $12,828.42 to Elsbet Smith and $3,516.78 to Frank DiVittorio, is affirmed. The district court's award of penalties is amended to $32,919.89 in favor of Ms. Smith and $34,073.86 in favor of Mr. DiVittorio, and affirmed as amended. The district court's award of attorney fees is reversed, and is this Court renders an award of $31,900.00 in attorney fees in favor of Ms. Smith and Mr. DiVittorio only. We partially grant the appellee's answer to the appeal, and award $4,000.00 to Ms. Smith and Mr. DiVittorio in attorney fees in conjunction with this appeal. Costs of this appeal are assessed against the appellant, Seale & Ross, PLC.

**AFFIRMED IN PART, REVERSED IN PART; RENDERED; ANSWER TO APPEAL GRANTED IN PART AND DENIED IN PART.**